Manuel T. FRAGANTE, Plaintiff,

v.

CITY AND COUNTY OF HONOLULU,
et al., Defendants.

No. CIV 83–1129.

United States District Court,
D. Hawaii.

Sept. 29, 1987.

William D. Hoshijo, Esther K. Arinaga,
Na Loio No Na Kanaka, Honolulu, Hawaii,
for plaintiff.

Richard D. Wurdeman, Corp. Counsel,
Gilbert C. Doles, Deputy Corp. Counsel,
City and County of Honolulu, Honolulu,
Hawaii, for defendants.

## FINDINGS· OF FACT AND CONCLUSIONS OF LAW AND ORDER

ROSENBLATT, District Judge, Sitting
by Designation.

### BACKGROUND

This is an employment discrimination
case brought under Title VII of the Civil
Rights Act of 1964, as amended by the
Equal Employment Opportunity Act of
1972, 42 U.S.C. Sec. 2000e–2 and 2000e–5.

The Plaintiff alleges that Defendants dis-
criminated against him by disparate treat-
ment on the basis of national origin, accent,
and race when they denied him employ-
ment. The Defendants defend on failure to
state a claim and denial of unlawful dis-
crimination.

### FINDINGS OF FACT

The Plaintiff, Manuel T. Fragante, is a
United States citizen of Philippines national
origin. He was born September 27, 1921 in
Manila. He was well educated, with hon-
ors, in the Philippines. He served as a
career officer for 30 years in the Philip-
pines Armed Forces retiring while holding
the position of Army Adjutant. Most of
Mr. Fragante's schooling, both civilian and
military, was conducted primarily in Eng-
lish. After retirement he had subsequent
work experience of a supervisorial and ad-
ministrative nature in Manila, Philippines.

In April, 1981 he and his wife immigrat-
ed to the United States where he was natu-
ralized as a citizen in Honolulu, Hawaii in
January, 1983, during which period he
worked for the Honolulu Community Ac-
tion Program.

The Defendant City and County of Hono-
lulu is a municipal corporation within the
State of Hawaii. Defendants George Ku-
wahara, Dennis Kamimura, Peter Leong,
Kalani McCandless and Eileen Anderson
were employed by the City in their respec-
tive positions of Assistant Licensing Ad-
ministrator, Licensing Administrator, Di-

rector of the Department of Finance, Secretary to the Licensing Administrator; and Mayor. Presently Peter Leong and Eileen Anderson are no longer employed by the City and Kalani McCandless is deceased.

On November 2, 1981 the City placed an advertisement in the daily newspapers for an employment opportunity as a Clerk SR–8. On November 10, 1981 Plaintiff submitted his application for the advertised position. On December 19, 1981 he took the Civil Service written examination number 043812. He received a grade of 96 and was ranked number 1 on the list of eligibles. 721 applicants took the exam, 371 passed and 350 failed.

Mr. Fragante was one of fifteen applicants certified to the Department of Finance, Motor Vehicles and Licensing Division in response to a request for eligibles dated March 22, 1982 to fill two Clerk SR–8 vacancies. Of those certified Plaintiff was ranked number 1.

The employment announcement posted for the SR–8 position concerning the eligible list and referral stated:

> The names of the "top five" qualified applicants with the highest examination grades will be referred to the employing agency in the order of their examination grade and availability for employment according to Civil Service Rules. The employing agency may select any one of the eligibles referred. Those not selected will remain on the list for at least one year for future referrals.

Rule 4.2d of the Civil Service Rules provides, in pertinent part, "an appointment from such certified lists of eligibles may be made without regard to rank order."

Thus, Civil Service certified fifteen applicants for the two positions. The fifteen included the five highest scores including tied scores, transfer, and reemployment applicants who also qualified. Four, including Fragante, chose to be interviewed and five had been interviewed previously. All nine were considered minimally qualified.

On April 6, 1982, Plaintiff reported to the Division of Motor Vehicles and Licensing for a scheduled interview. The interview was conducted by George Kuwahara and Kalani McCandless. Normally, the administrator would participate as a third member of the interview panel, but that did not occur in these interviews.

Kuwahara, a college graduate, regularly conducted interviews for vacancies in the Division and was involved in 50–100 interviews during the three years he was assistant licensing administrator.

Kalani McCandless was the division secretary. She worked under Kuwahara, the number two person in the Division, but as described by the Administrator, Dennis Kamimura, she was "really the office manager rather than a secretary." She had served in almost all of the positions in the Motor Vehicle Division, was a good interviewer and had vast experience as an interviewer and as an employee in the Motor Vehicle Division, having preceded both Kuwahara and Kamimuri in the Division.

The April 6 interview took approximately 10–15 minutes. The interview was informal. There were no written interview questions but it was standard as compared to other interviews then and on previous vacancies. Although *standard,* the interview lacked formality as to standards, instructions, guidelines, or criteria for its conduct. There was no validation of questions and the interviewers were not formally trained in the process.

After the interview, on the same day, Kuwahara and McCandless scored Plaintiff on an interview rating sheet. The rating sheet was inadequate. Ratings categories were vague, qualitative in nature though reduced to qualitative terms, non-correlative, and not clearly job related nor well defined. Dr. James Kirkpatrick, an Industrial Psychologist, termed it seriously flawed. He testified that written tests are acceptable and reliable. But that the interview and the rating system were entirely subjective and did not meet federal or any acceptable standards of collective decision making. He did not have any familiarity with the activities of the license bureau and never talked to Fragante.

After all those certified had been interviewed, including Plaintiff, Kuwahara and

McCandless reviewed the scores which in reference to Plaintiff had noted "Very pronounced accent, difficult to understand," "Major drawback, difficult to understand. Would have problem working on counter and answering phone. Otherwise, a good candidate," and "Heavy Filipino accent. Would be difficult to understand over telephone." They discussed the applicants in relation to the job demands and decided by consensus on their recommendations to the Finance Director, Peter Leong.

In a written recommendation dated April 13, 1982, Kuwahara requested that Melvin Abe and Morris Miyagi be selected for the vacancies, and ranked Plaintiff third among the four applicants interviewed. He was described as follows:

3. Manuel Fragante—Retired Phillipine (sic) army officer speaks with very pronounced accent which is difficult to understand. He has 37 years of experience in management and administration and appears more qualified for professional rather than clerical work. However, because of his accent, I would not recommend him for this position.

In a letter dated June 7, 1982, McCandless notified Plaintiff that he was not selected for the clerk position vacancies.

For a subsequent vacancy Kuwahara recommended in a memo dated June 25, 1982 that Nora Jean Jose be selected as a clerk. Fragante was not selected because of his accent.

In a letter dated June 28, 1982, Kuwahara informed Plaintiff of the reason for non-selection:

As to the reason for your non-selection, we felt the two selected applicants were both superior in their verbal communication ability. As we indicated in your interview, our clerks were constantly dealing with the public and the ability to speak clearly is one of the most important skills required for the position. Therefore, while we were impressed with your educational and employment history, we felt the applicants selected would be better able to work in our office because of their communication skills.

At the time of the Plaintiff's interview, there was no routine review, evaluation or validation of interview procedures or rating systems by employment or labor relation specialists in the Department of Civil Service.

The duties and responsibilities of the Clerk SR–8 position, as described in Form DF–141, involved: (1) answering the telephone; (2) providing motor vehicle registration information to the public at the counter and as requested by the general public and financial institutions, motor vehicle dealers, either by phone or mail; and, (3) acting as field cashier in accepting motor vehicle renewals and dog and bicycle licenses during renewal periods. There were other duties and responsibilities, but all clerks were rotated to perform the full job descriptions and almost all of the duties involved contact with the public.

The job is a difficult one because it involves dealing with a great number of disgruntled members of the public. The clerk must deal with 200–500 people per day, many of whom are angry or complaining and who do not want to hear what the clerk may have to explain concerning their applications or in answer to their questions. It is a high turnover position where people leave quickly because of the high stress involving daily contact with contentious people. The position is the lowest paid in the city.

Fragante was bypassed because of his "accent." As explained by Dr. Michael Forman, a PhD and an associate professor of socio and ethnic linguistics specializing in Filipino interactions with anglos, there is a misunderstanding as to what an accent is. Everyone has an accent. It is merely a manner of pronunciation, often linked to national origin.

While Plaintiff has extensive verbal communication skill in English it is understandable why the interviewers might reach their conclusion. And while there is no necessary relationship between accent and verbal communication, as opined by Dr. Forman, listeners stop listening to Filipino accents, resulting in a breakdown of com-

munication. Hawaii is a socially and linguistically complex community.

Fragante, in fact, has a difficult manner of pronunciation and the Court further finds as a fact from his general testimony that he would often not respond directly to the questions as propounded. He maintains much of his military bearing.

After receiving notice of the reason for his non-selection, Mr. Fragante filed a charge of discrimination dated September 2, 1982 and amended January 19, 1983. Harry Fujimori, a Fair Employment Practices Specialist, investigated the complaint of race, national origin and age discrimination and determined that the respondents/defendants did not discriminate against the plaintiff and issued a right to sue letter from the EEOC. This complaint followed on October 27, 1983.

## CONCLUSIONS OF LAW

The Court has jurisdiction over the parties and subject matter of this action by virtue of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e *et seq.* The Defendant City and County of Honolulu is an employer within the meaning of Title VII of the Civil Rights Act of 1964.

The rejection by the City of Plaintiff's application for the position of Clerk SR–8 was not based upon any discrimination against Plaintiff because of his race or national origin. It was based on a reasonable policy that is related to the position of Clerk SR–8 and therefore constitutes a business necessity.

The requirement of being able to communicate clearly and effectively with an often contentious general public is a bona fide occupational qualification which is necessary to the City's business of providing services and assistance to the general public concerning motor vehicles and licensing matters.

The results of Plaintiff's interview show that his oral communication skills were hampered by his accent or manner of speaking, and pronouncing, which made it difficult for the City interviewers to understand his answers and statements during the course of the interview.

In spite of the insufficiencies of the rating system and the weaknesses of the interview process, as applied to the Plaintiff, they were not discriminating. Nor did the interviewers utilize them in anyway to discriminate against the Plaintiff.

The two applicants, who were selected, satisfied the City's bona fide occupational requirement and therefore were better qualified than Plaintiff for the position of Clerk SR–8.

The City Civil Service Rule 4.2d allowed the Motor Vehicle and Licensing Division of the Department of Finance to select any one of the top five eligibles, among whom was Plaintiff, without regard to his number one ranking.

Plaintiff's non-selection was not disparate treatment and did not violate Title VII of the Civil Rights Act of 1964 because he failed to show that his non-selection was based on any discriminatory intent or motive by the City.

Plaintiff's non-selection did not violate 42 U.S.C. Sec. 1981 because he has failed to establish any proof of a discriminatory intent or motive by the City.

Plaintiff's non-selection did not violate his rights under the Fifth and Fourteenth Amendments of the United States Constitution because he has failed to establish any proof of a discriminatory intent or motive by the City.

## ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, it is the decision of this Court that Plaintiff's complaint be and it is hereby ordered dismissed.